## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
PA PAH PRODUCTIONS, INC. and                   :
ELGIN BAYLOR LUMPKIN p/k/a GINUWINE,                    08 CV 0391 (AKH)
                                               :        ECF CASE
                              Plaintiffs,

                                               :

              v.
                                               :

KING MUSIC GROUP, INC., KING MUISC
GROUP, LLC, M&A HOLDINGS, LLC,                  :
MICHAEL BOURNÉ and DOES 1-10 inclusive,

                                               :
                              Defendants.
                                               :
-------------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS-COUNTERCLAIMANTS'
## <u>MOTION TO DISMISS THE COMPLAINT</u>

JONATHAN D. DAVIS, P.C.
99 Park Avenue
Suite 1600
New York, New Your 10016
(212) 687-5464
Attorneys for Defendants-Counterclaimants
King Music Group, LLC and Michael Bourné

## TABLE OF CONTENTS

Preliminary Statement.........................................................................................................1

BACKGROUND FACTS....................................................................................................3

    A.  The Recording Agreement.....................................................................................3

    B.  The Basic Terms Agreement ................................................................................4

    C.  The New York State Action...................................................................................5

    D.  The Settlement Agreement ...................................................................................6

    E.  The Pleadings.........................................................................................................9

ARGUMENT.....................................................................................................................10

THE COMPLAINT SHOULD BE DISMISSED ..............................................................10

    A.  Governing Standards...........................................................................................10

POINT I
COUNT I FOR BREACH OF CONTRACT FAILS TO
ALLEGE SATISFACTION OF A CONDITION PRECEDENT ......................................10

POINT II
COUNTS II AND III FAIL TO ALLEGE CLAIMS INDEPENDENT
OF THE BREACH OF ANY CONTRACTUAL OBLIGATIONS ...................................13

CONCLUSION..................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*A.A. Sutain Limited v. Montgomery Ward & Co.,*
    22 A.D.2d 607, 257 N.Y.S.2d 724 (1st Dep't 1965),
    *aff'd*, 17 N.Y.2d 776, 270 N.Y.S.2d 636 (1966)....................................................20

*Berger v. Roosevelt Inv. Group Inc.,*
    28 A.D.3d 345, 813 N.Y.S.2d 419 (1st Dep't 2006) ......................................15 n. 6

*Best Western Intern., Inc. v. CSI Intern. Corp.,*
    1994 WL 465905 (S.D.N.Y Aug. 23, 1994)..........................................................16

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
    98 F.3d 13 (2d Cir. 1996)..........................................................................15, 17, 18

*Bronx Store Equipment Co. v. Westbury Brooklyn Associates, L.P.,*
    280 A.D.2d 352, 721 N.Y.S.2d 28 (1st Dep't 2001) ................................. 15-16 n.6

*Burns Int'l Sec. Servs., Inc. v. International Union,*
*United Plant Guard Workers of America,*
    47 F.3d 14 (2d Cir. 1994)......................................................................................10

*Century 21, Inc. v. Diamond State Ins. Co.,*
    2006 WL 2355323 (S.D.N.Y. Aug. 10, 2006).......................................................13

*Commercial Bank of Keokuk, Inc. v. Pfeiffer,*
    108 N.Y. 242 (1888) ..............................................................................................20

*Cranston Print Works Co. v. Brockmann International A.G.,*
    512 F. Supp. 609 (S.D.N.Y. 1981) ........................................................................18

*CVC Claims Litigation LLC v. Citicorp Venture Capital Ltd.,*
    2006 WL 1379596 (S.D.N.Y. May 18, 2006) ................................................. 12-13

*DBT Gmbh v. J.L. Min. Co.,*
    544 F. Supp.2d 364 (S.D.N.Y. 2008)....................................................................12

*DynCorp v. GTE Corp.,*
    215 F. Supp.2d 308 (S.D.N.Y. 2002)....................................................................19

*Goldstein v. CIBC World Markets Corp.,*
    6 A.D.3d 295, 776 N.Y.S.2d 12 (1st Dept 2004)........................................ 15-16 n.6

*Great Earth Intern. Franchising Corp. v. Milks Development,*
    311 F. Supp.2d 419 (S.D.N.Y. 2004)..........................................................16, 17, 18

*Hirsch v. Arthur Anderson & Co.,*
    72 F.3d 1085 (2d Cir. 1995)...............................................................................10

*Hladki v. Jeffrey's Consolidated, Ltd.,*
    652 F. Supp. 388 (E.D.N.Y. 1987) ......................................................................13

*The Hawthorne Group, LLC v. RRE Ventures,*
    7 A.D.3d 320, 776 N.Y.S.2d 273 (1st Dep't 2004) .........................................15 n.6

*Jericho Group, Ltd. v. Midtown Development, L.P.,*
    32 A.D.3d 294, 820 N.Y.S.2d 241 (1st Dep't 2006) .......................................15 n.6

*Kapson Const. Corp. v. ARA Plumbing & Heating Corp.,*
    227 A.D.2d 484, 642 N.Y.S.2d 701 (2d Dep't 1996)..........................................12

*Keegan v. Jacob Ruppert,*
    2 F.R.D. 8 (S.D.N.Y. 1941) ................................................................................13

*Kenneth Pregno Agency, Ltd. v. Letterese,*
    112 A.D.2d 1032, 492 N.Y.S.2d 824 (2d Dep't 1985) ...................................19-20

*McKernin v. Fanny Farmer Candy Shops, Inc.,*
    176 A.D.2d 233, 574 N.Y.S.2d 58 (2d Dep't 1991)............................................15

*Metropolitan Trans. Auth. v. Triumph Advertising Productions,*
    116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dep't 1986) .........................................15

*Modell's N.Y. v. Noodle Kidoodle,*
    242 A.D.2d 248, 662 N.Y.S.2d 24 (1st Dep't 1997) ................................. 15-16 n.6

*National Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co,*
    28 A.D.3d 1169, 814 N.Y.S.2d 436 (4th Dep't 2006)..........................................12

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,*
    86 N.Y.2d 685, 636 N.Y.S.2d 734 (1995) ....................................................11, 12

*Papa's-June Music, Inc. v. McLean,*
    921 F. Supp. 1154 (S.D.N.Y. 1996).....................................................................15

*Patel v. Contemporary Classics of Beverly Hills,*
    29 F.3d 123 (2d Cir. 2001)..................................................................................10

*Paulemon v. Tobin*,
    30 F.3d 307 (2d Cir. 1994)..................................................................................10

*Preferred Mortgage Brokers Inc. v. Byfield*,
    282 A.D.2d 589, 723 N.Y.S.2d 230 (2d Dep't 2001)............................................11

*Puma Indus. Consulting, Inc. v. Daal Associates, Inc.*,
    808 F.2d 982 (2d Cir. 1987)................................................................................19

*Sudul v. Computer Outsourcing Services*,
    868 F. Supp. 59 (S.D.N.Y. 1994) .................................................................. 16-17

*TVT Records v. Island Def Jam Music Group*,
    412 F.3d 82 (2d Cir. 2005),
    *cert. denied*, 548 U.S. 904 (2006)................................................................15 n.6

*U.S. v. Trimble*,
    86 F.R.D. 435 (D.C. Fla. 1980) ...........................................................................13

*Zachariou v. Manios*,
    50 A.D.3d 257, 854 N.Y.S.2d 694 (1st Dep't 2008) .............................................16

*Zanoni v. 855 Holding Co., Inc.*,
    96 A.D.2d 860, 465 N.Y.S.2d 763 (2d Dep't 1983)..............................................20

*120 Greenwich Development Associates, LLC v. Reliance Ins. Co.*,
    2004 WL 1277998 (S.D.N.Y. June 8, 2004) .......................................................12

*767 Third Ave. LLC v. Greble & Finger, LLP*,
    8 A.D.3d 75, 778 N.Y.S.2d 157 (1st Dep't 2004) ...........................................15 n.6

## Statutes:

Rule 10(c), Fed. R. Civ. P...................................................................................10

Rule 12(b)(6), Fed. R. Civ. P...............................................................................10

Rule 12(c), Fed. R. Civ. P........................................................................ 1, 10, 10-11 n.5

## Other Authorities:

2 Moore's Federal Practice §12.38 .....................................................................10

5-A Wright & Miller, Fed. Prac. & Proc. §1303 ..................................................13

8 Fletcher Cyclopedia of the Law of Corporations §3910....................................19

## **Preliminary Statement**

This memorandum of law is respectfully submitted on behalf of Defendants-Counterclaimants King Music Group, LLC, formerly known as M&A Holdings, LLC (incorrectly sued separately as "M&A Holdings, LLC" and "King Music Group, Inc."),[1] and Michael Bourné in support of their motion for an order pursuant to Rule 12(c), Fed. R. Civ. P., dismissing the complaint, dated January 15, 2008 ("Complaint"), on the grounds that Plaintiffs fail to allege compliance with conditions precedent.[2]

Plaintiffs have adopted the all too familiar ruse of attempting to redress their claims for breach of contract as both fraud and negligent misrepresentation claims by contending that Defendants never intended to fulfill their obligations under certain agreements. Counts II and III of the Complaint must be dismissed for failure to allege fraud and misrepresentation independent of contractual obligations.

Finally, because there is no actionable claim based on the contractual obligations alleged in the Complaint, Plaintiffs are not entitled to the declaratory relief demanded in Count IV.

---

[1]  Plaintiffs have purported to sue non-existent entity "King Music Group, Inc." "M&A Holdings, LLC," duly formed on April 19, 2007, is a limited liability company organized under the laws of the State of Tennessee. On or about October 11, 2007, M&A Holdings, LLC was renamed "King Music Group, LLC" by filing an amendment with the Tennessee Secretary of State's Office. Prior to the formal name change, M&A Holdings, LLC was doing business as "King Music Group, LLC," which was sometimes mistakenly referred to as "King Music Group, Inc." (underlining added).

[2]  A copy of the Complaint is attached as Exhibit A to the accompanying Declaration of Jonathan D. Davis, dated June 11, 2008 ("Davis Decl.").

This action for breach of contract, fraud, negligent misrepresentation and declaratory relief is based on Defendants' purported failure to fully perform alleged obligations under the letter settlement agreement, dated October 7, 2007 ("Settlement Agreement"), that compromised a New York State court action ("State Action") involving the same parties. Davis Decl., Exhibit A at ¶5 of the Complaint. The State Action was based on claims that Defendants failed to fulfill their obligations under a recording agreement ("Recording Agreement") under which Plaintiff Pa Pah Productions, Inc. ("Pa Pah") was to furnish the musical recording services of Plaintiff Elgin Baylor Lumpkin p/k/a "Ginuwine" exclusively to Defendants. The Recording Agreement, however, was subject to a specific condition precedent requiring the parties to negotiate a co-publishing agreement. Defendants had the absolute right to terminate the Recording Agreement if this condition was not met. Because the condition precedent was never satisfied and Defendants' obligations under the Recording Agreement never ripened, Plaintiffs are not entitled to any of the benefits or consideration they claim in this action.

Even if a contractual relationship exists between Plaintiffs and Defendants, Counts II and III of the Complaint must be dismissed because they are deficiently pleaded. These claims purport to allege that Defendants falsely and negligently represented their abilities and intentions to honor the terms of the Recording Agreement and the Settlement Agreement. These allegations fail to state claims separate from the contractual obligations alleged in the Complaint. Accordingly, Counts II and III must be dismissed under well-established principles of New York law.

Finally, Plaintiffs are estopped from alleging in Counts I, II, and III that Defendants breached the Settlement Agreement or made fraudulent or negligent

2

misrepresentations because of their purported failure to validly form King Music Group, Inc. (underlining added).  Plaintiffs knowingly entered into the Settlement Agreement with King Music Group, Inc. and insisted upon an interest in that company days after they had alleged in the State Action that the entity was a fiction.  However, King Music Group, Inc. was a misnomer and was always intended by the parties to refer to King Music Group, LLC. *See* fn. 1.

## BACKGROUND FACTS

### A. The Recording Agreement

On or about May 8, 2007, King Music Group, Inc. (*see* fn. 1) entered into a Recording Agreement with Pa Pah on behalf of Lumpkin, whereby it secured, among other things, the exclusive rights to Lumpkin's recording services.  Davis Decl., Exhibit A, at Exhibit A to the Complaint.

The Recording Agreement at ¶1.01(a) provides that Plaintiffs "hereby represent, warrant and agree that during the term of this agreement, you will render your exclusive recording services to Company in the Territory as provided herein."[3]

In an Inducement Letter (Davis Decl., Exhibit A at Exhibit A to the Complaint), Lumpkin confirmed the exclusive rights to his recording services that were granted to "Company" under the Recording Agreement.

---

[3] Paragraph 1.06 further provides, *inter alia*, that: "You warrant and represent that Artist will not perform for any Person other than Company (and neither you nor Artist will license or consent to or permit the use by any Person other than Company of Artist's name or likeness) for or in connection with the recording or exploitation of any Record embodying a Composition recorded by Artist under this agreement prior to the later of (i) the date five (5) years after the date of Delivery hereunder to Company of the last Master embodying that Composition, or (ii) the date two (2) years after the expiration or termination of the term of this agreement or any subsequent agreement between Company and you or Artist or any other Person furnishing Artist's recording services."

**B. The Basic Terms Agreement**

As provided in the "Basic Terms Agreement," which also is dated as of May 8, 2007 and made a part of the Recording Agreement (Davis Decl., Exhibit A, at Exhibit A to the Complaint), the Recording Agreement was for an initial period plus two option periods. Thus, Pa Pah was potentially obligated to deliver up to three (3) albums recorded by Lumpkin.

Paragraph 3(a) of the Basic Terms Agreement provides for the payment of Artist Advances as follows: "Albums 1-3: $1,000,000 per Album. Company shall pay you, as a non-returnable Advance **(subject to paragraph 9 below),** $750,000 (to be deducted equally from each of the Recording Funds for Albums 1-3, *i.e.*, $250,000 from the each such Recording Fund), paid as follows: $500,000 upon full execution of this Agreement ('Execution Advance'); and $250,000 upon Delivery of Album 1." (Emphasis added). Paragraph 9 of the Basic Terms Agreement, as referenced in ¶3(a), provides that: "In order to induce Company to execute this Agreement (it being to Artist's benefit as a recording artist that Company execute same) and to pay good and valuable consideration inuring to Artist's benefit under this Agreement, Artist hereby agrees that Company shall not be obligated or required to allow Artist to commence recording the Album to be delivered in connection with the Recording Commitment for the initial Contract Period of the Agreement, **unless the parties hereto negotiate and execute a co-publishing agreement** (the 'Co-Publishing Agreement'). (Emphasis added). In the event the parties fail, after good faith negotiations, to execute a Co-Publishing Agreement within the time prescribed in the preceding sentence, Company shall have the right to terminate this Agreement."

4

Paragraph 4.01 of the Recording Agreement granted the "Company" prior approval and control over the budget for recording sessions: "You will conduct recording sessions only after you and Company mutually approve in writing the individual producer, the places of recording, the Compositions to be recorded and after you obtain Company's written approval of the Authorized Budget, provided that in the event of a disagreement in respect of times or places of recording or selection of producers, Company's decision shall be final."

## C. The New York State Action

On or about October 3, 2007, even though the parties had not entered into the required Co-Publishing Agreement or approved a recording budget, and thus no advances were due, Plaintiffs filed a baseless action in New York State Supreme Court against Defendants alleging (i) breach of contract for the purported non-payment of the $500,000 Execution Advance and (ii) fraud on the basis that there was no entity named King Music Group, Inc.[4]  Davis Decl., Exhibit A, at Exhibit B to the Complaint.

Plaintiffs' lawsuit and, in particular, the spurious fraud allegations, were calculated to cause collateral damage to Bourné and his businesses. Indeed, as a result of the tabloid nature of the allegations against Bourné for fraud, banking relationships were endangered solely as a result of the negative global media attention that was given to the meritless claims peddled by Lumpkin, an internationally-recognized celebrity.

---

[4]  Pursuant to ¶16.08 of the Recording Agreement, the parties agreed to a choice of New York law with respect to the validity, interpretation and legal effect of the agreement, and agreed to the exclusive jurisdiction of the state and federal courts in the State of New York for any controversies regarding the agreement. In ¶12 of the Inducement Letter, Lumpkin similarly agreed to the choice of New York law and the exclusive jurisdiction of the New York State courts and the federal courts located in New York City.

Although they had not negotiated the requisite Co-Publishing Agreement, or performed any service under the Recording Agreement, Plaintiffs, keenly aware of the acute financial pressure that the lawsuit placed on Bourné, used those circumstances to force Bourné to settle the New York State Action on October 9, 2007, six days after the action was filed.    Bourné was not represented by counsel in connection with the negotiations and ensuing settlement of that action.

## D. The Settlement Agreement

The Settlement Agreement in the New York State Action (Davis Decl. Exhibit A, at Exhibit C to the Complaint) amended the Recording Agreement in certain respects, but did not otherwise affect its terms.

The Settlement Agreement provides, among other things, that Bourné deliver a certified check in the amount of $250,000 for Lumpkin's benefit and a certified check in the amount of $100,000 payable to Lumpkin's lawyer to be held in trust for Lumpkin. Bourné timely, but unnecessarily, paid these sums, as the Complaint acknowledges. Davis Decl., Exhibit A at ¶32 of the Complaint.

The Settlement Agreement also provides that Lumpkin share title in the company's 2005 Rolls Royce, which Bourné had purchased for King Music Group, LLC to add glamour and enhance its image. Davis Decl., Exhibit A, at Exhibit C to the Complaint. Once Lumpkin was signed to the label, it had been intended that Lumpkin would have use of the car, while ownership remained in the entity's name.

In addition, the Settlement Agreement provides that Bourné establish a line of credit for $1,000,000 "for all costs incurred in connection with the recording of the First Album under the terms of the aforesaid Agreement." The Settlement Agreement further

6

provides that Lumpkin, his representatives, Louis Bush (Lumpkin's manager) and Terence Williams, would receive individual American Express Black Cards with respect to the credit line. The Settlement Agreement provides that Bourné and Bush would negotiate deals for certain budget items together, but did not amend the "Company's" absolute authority to approve the budget for the album.

Finally, although Plaintiffs based their spurious fraud claim in the New York State Action on the grounds that there was no entity entitled King Music Group, Inc., the Settlement Agreement was entered into by Pa Pah "and M & A Holdings, LLC d.b.a. King Music Group, Inc." It provides that Lumpkin be granted a 50% interest in the net profits derived by Bourné and/or King Music Group, Inc. and that it is "expressly agreed that Mr. Bourné and Mr. Lumpkin are equal partners in King Music Group, Inc."

With the advice of counsel, Lumpkin proceeded to secure a 50% interest in King Music Group, Inc., an entity which he claimed in a lawsuit filed less than a week earlier did not exist. The mistaken reference to King Music Group, Inc. was plainly meant to refer to King Music Group, LLC. Indeed, Plaintiffs were aware that any reference to King Music Group, Inc., instead of King Music Group, LLC, was inadvertent and inconsequential, as Defendants never denied their obligations, such as they might arise, as a *bona fide* record company.

As discussed *infra*, Plaintiffs are estopped from asserting any claim that Defendants made fraudulent or negligent misrepresentations about the creation of the entity which was intended to serve as the record company benefiting from Lumpkin's exclusive recording services and which would be responsible for financing the cost of making his musical recordings.

Following the execution of the Settlement Agreement, Lumpkin's current attorneys were sent the documentation of the name change of "M&A Holdings, LLC" to "King Music Group, LLC." Thus, they were or should have been aware that the use of the word "Inc." in connection with King Music Group, LLC was inadvertent, and had been corrected on October 11, 2007, when M&A Holdings, LLC formally changed its name with the Tennessee Secretary of State to King Music Group, LLC.

In or about November 2007, Lumpkin's representatives submitted a budget for $389,850, and repeatedly demanded that the $1,000,000 line of credit be established. They sought the immediate issuance of American Express Black cards to draw on the credit line. However, no monies for recording sessions were due until and unless: (i) the parties negotiated a Co-Publishing Agreement, an event which never occurred, and (ii) the record company "approved" the budget by the requisite writing, which event also never occurred. The recording budget proposed by Lumpkin was mired in controversy and delay, because, among other things, Lumpkin attempted to pass through a preposterous $87,500 budget item to build a home recording studio in his Maryland residence.

In addition to making spurious fraud allegations, failing to negotiate the Co-Publishing Agreement, and demanding access to a $1,000,000 line of credit, Plaintiffs willfully breached the Recording Agreement and Inducement Letter by violating the exclusivity provisions that prohibited Lumpkin from rendering his recording services to any third parties. In particular, the media reported that Lumpkin recorded a collaborative track, *Sex*, with a new recording group, professionally known as "TGT."

## E. The Pleadings

The Complaint purports to allege four claims for relief. In Count I, it seeks $1 million in damages for Defendants' alleged breaches of the Settlement Agreement. In Counts II and III, based on Defendants' alleged fraudulent and negligent representations with respect to their obligations under the Recording Agreement and the Settlement Agreement, the Complaint seeks unspecified compensatory damages, punitive damages and a constructive trust with respect to Lumpkin's ownership in the record company. Lastly, in Count IV, Plaintiffs seek a judicial declaration that they are excused from the exclusivity and non-competition provisions of the Recording Agreement because of Defendants' alleged material breaches of the Settlement Agreement.

Defendants have counterclaimed seeking injunctive relief, impoundment and destruction and an accounting and a constructive trust (First through Fourth Counterclaims) in connection with Plaintiffs' recording with TGT in violation of King Music Group, LLC's rights under the Recording Agreement. Defendants have also asserted counterclaims with respect to Plaintiffs' breaches of the Recording Agreement and the duty of good faith and fair dealing (Fifth and Sixth Counterclaims). Alternatively, Defendants assert a counterclaim based on Plaintiffs' unjust enrichment in the same amount (Seventh Counterclaim). Defendants also seek rescission and the disgorgement of all monies and property received by Plaintiffs (Eighth Counterclaim). Finally, Defendants seek a declaration that the Recording and Settlement Agreements are invalid and without force or effect and the disgorgement by Plaintiffs of all monies and property they received under those agreements (Ninth Counterclaim). Davis Decl., Exhibit B. Plaintiffs have denied any liability under the counterclaims. Davis Decl., Exhibit C.

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED

### A. Governing Standards

In ruling on a motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., the district court applies the same standards as for a Rule 12(b)(6) motion. It must accept the allegations in the compliant as true and draw all inferences in favor of the non-moving party. *Patel v. Contemporary Classics of Beverly Hills*, 29 F.3d 123, 125-26 (2d Cir. 2001). Judgment on the pleadings should be granted if the movant "is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Intern. Union, United Plant Guard Workers of America*, 47 F.3d 14, 16 (2d Cir. 1994).

In determining the motion, the court may consider any of the pleadings, and any instruments attached to them.[5] *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995); *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); 2 Moore's Federal Practice §12.38 n. 3.1, *citing* Rule 10(c), Fed. R. Civ. P., which provides: "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

### POINT I

### COUNT I FOR BREACH OF CONTRACT FAILS TO ALLEGE SATISFACTION OF A CONDITION PRECEDENT

Plaintiffs allege that their claims, including their tort-claims based on fraud and negligent misrepresentation, arise out of Defendants' alleged breaches of the Recording Agreement and the Settlement Agreement. Davis Decl., Exhibit A, at ¶¶1 and 5 of the

---

[5]    Attached to Exhibit A to the Davis Decl. are the following:    (i) the Recording Agreement, Inducement Letter and Basic Terms Agreement, which are Exhibit A thereto; (ii) the Summons and Complaint in the State Action are attached as Exhibit B thereto; and
*Footnote continued on next page.*

Complaint. Specifically, Plaintiffs claim that Defendants failed to make a $1 million dollar line of credit available to them for recording costs or to provide Lumpkin and his agents with access to this line of credit.

Plaintiffs ignore the provisions in the Basic Terms Agreement requiring the parties to negotiate and execute a Co-Publishing Agreement before King Music Group, LLC would have any obligation to pay advances for recording costs or permit Lumpkin to commence recording. Moreover, the same provision affords King Music Group, LLC the absolute right to terminate the Recording Agreement if a Co-Publishing Agreement is not negotiated and executed. Plaintiffs do not dispute that the parties never entered into a Co-Publishing Agreement. Davis Decl., Exhibit C. Plaintiffs also ignore the fact that Defendants never gave written approval for the "Authorized Budget," and Plaintiffs' demands for advances for recording costs were, at the very least, premature on this ground.

The negotiation and execution of a Co-Publishing Agreement was an express condition precedent to any obligation on King Music Group, LLC's part under the Recording Agreement. A condition precedent is "an act or event other than a lapse of time, which unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 737 (1995); *Preferred Mortgage Brokers, Inc. v Byfield*, 282 A.D.2d 589, 590, 723 N.Y.S.2d 230 (2d Dep't 2001) (since defendants

---

(iii) the Settlement Agreement is attached as Exhibit C thereto. The Court may consider these documents as part of the pleadings on a motion to dismiss pursuant to Rule 12(c).

never accepted the loan commitment in writing, the express condition precedent was not satisfied, and the defendants were not obligated to pay a broker's fee); *Kapson Const. Corp. v. ARA Plumbing & Heating Corp.*, 227 A.D.2d 484, 642 N.Y.S.2d 701, 702-03 (2d Dep't 1996).

In *Oppenheimer*, the Court of Appeals held that the non-occurrence of the condition precedent may not be excused when the condition is a "material part of the agreed exchange." *Id. See also DBT Gmbh v. J. L. Min. Co.*, 544 F. Supp.2d 364 (S.D.N.Y. 2008); *120 Greenwich Development Associates, LLC v. Reliance Ins. Co.*, 2004 WL 1277998 (S.D.N.Y. June 8, 2004) at *11-13. Here, the materiality of the provision requiring the negotiation and execution of a Co-Publishing Agreement is evident from the language employed by the parties: "In order to induce Company to execute this Agreement . . . and to pay good and valuable consideration inuring to Artist's benefit under this Agreement . . . ."

As the Court of Appeals in *Oppenheimer* also explained, the intent to create a condition precedent must be given effect when the parties employ "unmistakable language of condition," 86 N.Y.2d at 691, 636 N.Y.S.2d at 737, such as the terms, "unless the parties hereto negotiate and execute a co-publishing agreement," which are found in the Basic Terms Agreement. *See also National Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co.*, 28 A.D.3d 1169, 1170, 814 N.Y.S.2d 436, 437 (4th Dep't 2006) (notice requirement follows the word "PROVIDED" which indicates the creation of a condition).

Although a plaintiff may plead the satisfaction of a condition precedent generally, which was not even done in the instant case, failure to include any allegations regarding the conditions for liability will result in dismissal. *See, .e.g., CVC Claims Litigation LLC*

12

*v. Citicorp Venture Capital Ltd.*, 2006 WL 1379596 (S.D.N.Y. May 18, 2006) at *4 ("Plaintiff has failed to allege, even generally, that the conditions precedent were performed or had occurred."); *Keegan v. Jacob Ruppert*, 2 F.R.D. 8 ( S.D.N.Y. 1941). *See also Hladki v. Jeffrey's Consolidated, Ltd.*, 652 F. Supp. 388, 393 (E.D.N.Y. 1987); *U.S. v. Trimble*, 86 F.R.D. 435 (D.C. Fla. 1980); 5-A, Wright & Miller, Fed. Prac. & Proc. §1303. *Cf. Century 21, Inc. v. Diamond State Ins. Co.*, 2006 WL 2355323 (S.D.N.Y. Aug. 10, 2006) at *2-3 ("timely notice is a condition precedent that the insured must plead and prove in order to demonstrate coverage").

Because the parties never satisfied the condition precedent to the Recording Agreement, *i.e.*, the negotiation of a Co-Publishing Agreement, there was never any obligation on Defendants to make any advances for recording costs or to otherwise confer any benefits on Plaintiffs under either the Recording or Settlement Agreements. As a result of the failure of the condition precedent, Defendants did not breach either agreement.

Plaintiffs are thus not entitled to the cash advances for recording purposes, transfer of title to the Rolls Royce, or participation in the record company as recited in the Settlement Agreement. Plaintiffs' claim for breach of contract based on obligations that never materialized must be dismissed as a matter of law.

## POINT II

### COUNTS II AND III FAIL TO ALLEGE CLAIMS
### INDEPENDENT OF THE BREACH OF ANY CONTRACT OBLIGATIONS

In Count I of the Complaint for breach of contract, Plaintiffs allege that Defendants breached the Settlement Agreement:

"by refusing to (1) transfer title, free of all liens and encumbrances, to the 2005 Rolls Royce to Lumpkin; (2) establish and provide access to a $1 million line of credit for recording costs; (3) establish American Express Black card accounts for Lumpkin and Bush for recording costs; and (4) convey Lumpkin a fifty-percent (50%) interest in King Music Group. In addition, King Music Group breached its representation and warranty contained in the Settlement Agreement by executing the agreement as a validly formed and registered entity."

Davis Decl., Exhibit A, at ¶41 of the Complaint.

In Count II, Plaintiffs recast the very same breach of contract allegations as the basis for their fraud claim:

"Bourne, for himself, and for the benefit of King Music Group, King Music Group, LLC, and M&A Holdings, made false representations of material facts to, and concealed material facts from, Plaintiffs concerning the benefits to Plaintiffs in executing the exclusive Recording Agreement and the ability of Defendants to fund their obligations under the Recording Agreement, and later, the Settlement Agreement, the payment of compensation to Plaintiffs, the formation of King Music Group as a viable entity, the availability and provision of a recording line of credit to pay for the recording costs incurred by Plaintiffs in producing an album, and the conveyance of a fifty-percent (50%) interest in

>        King Music Group to Lumpkin, among other things, as described
>        above."

Davis Decl., Exhibit A, at ¶45 of the Complaint.

Plaintiffs repeat the fraud allegations verbatim as a negligent misrepresentation claim in Count III of the Complaint. Davis Decl., Exhibit A, at ¶53 of the Complaint. The allegations in the fraud and misrepresentation claims are based upon the identical contractual obligations alleged in Count I and thus must be dismissed as a matter of law.

In *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996), the defendant made numerous representations to plaintiff as to its intention to remit sums due under their agreement and sent checks with knowledge they were drawn on insufficient funds. The Court of Appeals assumed that these representations were intended to lull Bridgestone/Firestone into a false sense of security to its detriment.

In dismissing the fraud claim, the Court ruled: "these facts amount to little more than intentionally false statements by Beladino indicating his intent to perform under the contract. That is not sufficient to support a claim for fraud under New York law." 98 F.3d at 19 *citing McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991); *Metropolitan Trans. Auth. v. Triumph Advertising Productions*, 116 A.D.2d 526, 527, 497 N.Y.S.2d 673 (1st Dep't 1986); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996).[6]

---

[6]    *See also TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 91-92 (2d Cir. 2005), *cert. denied*, 548 U.S. 904 (2006); *Jericho Group, Ltd. v. Midtown Development, L.P.*, 32 A.D.3d 294, 300, 820 N.Y.S.2d 241 (1st Dep't 2006); *Berger v. Roosevelt Inv. Group Inc.*, 28 A.D.3d 345, 345-46, 813 N.Y.S.2d 419, 420 (1st Dep't 2006); *767 Third Ave. LLC v. Greble & Finger, LLP*, 8 A.D.3d 75, 76, 778 N.Y.S.2d 157 (1st Dep't 2004); *The Hawthorne Group, LLC v. RRE Ventures*, 7 A.D.3d 320, 323-24, 776 N.Y.S.2d 273 (1st Dep't 2004); *Goldstein v. CIBC World Markets Corp.*, 6 A.D.3d 295, 296, 776 *Footnote continued on next page.*

15

The pleading rule barring tort claims premised on alleged contractual breaches applies equally to the fraud claim in Count II and the negligent misrepresentation claim in Count III of the Complaint here. *See, e.g., Great Earth Intern. Franchising Corp. v. Milks Development*, 311 F. Supp.2d 419, 428 (S.D.N.Y. 2004) (Hellerstein, J.) ("the basic rule is that a tort claim cannot be a reiteration of a breach of contract claim"); *Zachariou v. Manios*, 50 A.D.3d 257, 854 N.Y.S.2d 694, 695 (1st Dep't 2008) ("The causes of action for fraud and negligent misrepresentation . . . were based upon conduct 'innate to the performance of the contract' and thus encompassed in the breach of contract cause of action.").

In *Best Western Intern., Inc. v. CSI Intern. Corp.*, 1994 WL 465905 at *4 (S.D.N.Y Aug. 23, 1994), the district court stated:

> The majority of courts, including the Appellate Division, have held that simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim. (citations omitted).

*Id.* at 4.

This position was followed in *Sudul v. Computer Outsourcing Services*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994). In that case, plaintiff claimed, *inter alia*, that he was fraudulently induced to enter into an employment agreement by defendant's promise that it "would honor its obligations under the agreement, even though the defendants did not

---

N.Y.S.2d 12 (1st Dept 2004); *Bronx Store Equipment Co. v. Westbury Brooklyn Associates, L.P.*, 280 A.D.2d 352, 721 N.Y.S.2d 28 (1st Dep't 2001); *Modell's N.Y. v. Noodle Kidoodle*, 242 A.D.2d 248, 249, 662 N.Y.S.2d 24 (1st Dep't 1997).

actually intend that [Computer Outsourcing Services] would do so." *Id.* at 61. Plaintiff also alleged that he "'was in a legal and economic position to control the significant assets and future of DFI and its business'" and that he was induced to surrender this control based upon these misrepresentations. *Id.*

In granting defendants' motion to dismiss under Rule 12(b)(6), the district court held that plaintiff "should not be allowed to bootstrap a breach of contract into a fraud claim by simply including in his complaint an allegation that defendant never intended to uphold his end of the deal." In so holding, the court stated:

> A long line of New York courts . . . have held that, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.

*Id.*

As this Court explained in *Great Earth Intern. Franchising Corp.*, *supra*, 311 F. Supp.2d at 425, the *Bridgestone/Firestone* court laid out three exceptions by which a claimant can successfully distinguish its fraud claim from a breach of contract claim:

> First, a party may demonstrate its adversary had a legal duty towards it that was separate from its duty under the contract, and that the fraud it committed was a breach of that separate legal duty. [98 F.3d] at 21. Second, a party may 'demonstrate a fraudulent misrepresentation collateral or extraneous to the contract.' *Id.* Third, a party may show that it is entitled to 'special damages that are caused by the misrepresentation and [are] unrecoverable as contract damages.' *Id.*

In this case, Plaintiffs have not alleged any legal duty owed by Defendants that is separate and apart from the Recording Agreement or the Settlement Agreement, thus the first method under *Bridgestone/Firestone* is inapposite.

17

As for the second *Bridgestone/Firestone* exception – whether the alleged representations are "collateral or extraneous" to the contract – is the critical inquiry. If the contract speaks to the alleged misrepresentation, a separate cause of action for fraud will not lie. As this Court has stated, "as a matter of both logic and law, the primary consideration here is whether the contract itself speaks to the issue," *Great Earth Intern. Franchising, supra*, 311 F. Supp.2d at 426-27. As stated in *Cranston Print Works Co. v. Brockmann International A.G.*, 512 F. Supp. 609, 614 (S.D.N.Y. 1981), a cause of action for fraud under New York law "cannot be based solely upon the failure to perform the promises of future acts which constitute the contractual obligations themselves."

Here, the Recording Agreement and Settlement Agreement specifically speak to the issues raised in Plaintiffs' fraud/misrepresentation claims in Counts II and III, including the benefits and consideration to Plaintiffs under the agreements, the provision of a line of credit for recording costs, the conveyance of a fifty-percent interest in the record company, and the authority of the record company to enter into the agreements. A plain reading of the Complaint demonstrates that the allegations for breach of contract, fraud and negligent misrepresentation are uniformly based on specific contractual obligations.

Plaintiffs' claim that Defendants misrepresented their ability to fund their obligations under the agreements is no different than the allegations found insufficient to state a separate fraud claim in *Bridgestone/Firestone*, where the defendant knowingly made payments on its obligations with insufficient funds.

With respect to the third exception, Plaintiffs have not alleged any "special damages" that are "unrecoverable as contract damages" as stated in

18

*Bridgestone/Firestone.* As this Court explained in *DynCorp v. GTE Corp.*, 215 F. Supp.2d 308, 326-27 (S.D.N.Y. 2002) (Hellerstein, J.), "[s]pecial damages, in the context of commercial fraud, arise in consequence of a breach and seek to compensate a plaintiff for losses other than the diminished value of the promised performance. [citations omitted]. The circumstances giving rise to such damages must reasonably be anticipated at the time the contract was made." Plaintiffs have not alleged any misrepresentations that caused "special damages" unrecoverable as contract damages, or any special circumstances at the time of contracting that would warrant such relief.

Finally, it is incongruous for Plaintiffs to base their fraud and misrepresentation claims on the allegation that Defendants made false or negligent misrepresentations regarding the formation of King Music Group, Inc. as a viable entity. *Id.* at ¶¶45 and 53. They are estopped from doing so.

After suing Defendants in the State Action on the very ground that King Music Group, Inc. did not exist, Plaintiffs made an about-face and entered into the Settlement Agreement with that very named corporate entity, "M&A Holdings, LLC d.b.a King Music Group, Inc.," days after the suit was filed.    Under that agreement, Plaintiffs accepted, among other things, a 50% interest in the net revenues of "King Music Group, Inc." Plaintiffs cannot dispute that M&A Holdings, LLC is a validly registered company.

It is "beyond cavil" that a party "who contracts or deals with a body of persons as a corporation thereby admits that they are a corporation and is estopped to deny its incorporation in an action arising out of such contract." *Puma Indus. Consulting, Inc. v. Daal Associates, Inc.*, 808 F.2d 982, 986 (2d Cir. 1987), *quoting* 8 Fletcher Cyclopedia of the Law of Corporations §3910. *See also Kenneth Pregno Agency, Ltd. v. Letterese*, 112

A.D.2d 1032, 1034, 492 N.Y.S.2d 824, 826 (2d Dep't 1985); *Zanoni v. 855 Holding Co., Inc.*, 96 A.D.2d 860, 861, 465 N.Y.S.2d 763, 765 (2d Dep't 1983); *A.A. Sutain Limited v. Montgomery Ward & Co.*, 22 A.D.2d 607, 610, 257 N.Y.S.2d 724 (1st Dep't 1965), *aff'd*, 17 N.Y.2d 776, 270 N.Y.S.2d 636 (1966); *Commercial Bank of Keokuk, Inc. v. Pfeiffer*, 108 N.Y. 242, 253 (1888).

It is hard to conceive of a more compelling circumstance in which to estop a party from denying corporate status as here, where Plaintiffs entered into a Settlement Agreement, with the advice of independent counsel, and sought an interest in the very corporation Plaintiffs denied ever existed. As stated in *Zanoni*, *supra*, a party may not rely on deficiencies in corporate formalities when it contracted with "full knowledge" of the matters: "Having freely chosen to contract with Flower & Plotka Corp. under those circumstances, it cannot now assert that Flower & Plotka Corp. was not a valid corporation with the capacity to contract . . . ."

Plaintiffs are precluded from fashioning a fraud claim based upon its freely and voluntarily contracting with knowledge of the alleged failure to comply with corporate formalities. Indeed, there has never been a dispute that an actual company, M&A Holdings, LLC d/b/a King Music Group, LLC, stood behind Defendants' obligations under the agreements.

## CONCLUSION

For all the foregoing reasons, the Complaint should be dismissed in its entirety. Alternatively, Counts II and III of the Complaint should be dismissed for failure to allege tort-based claims independent of the contractual obligations alleged to have been breached, and all claims based on the status of King Music Group, Inc. should be dismissed.

Dated:   June 11, 2008
         New York, New York

JONATHAN D. DAVIS, P.C.

By: _____
     Jonathan D. Davis (JD 5712)
     99 Park Avenue
     Suite 1600
     New York, New York 10016
     (212) 687-5464
     Attorneys    for    Defendants    and
     Counterclaim-Plaintiffs King Music
     Group, LLC and Michael Bourné

21